IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIS C. McALLISTER,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>ADECCO USA INC., *et al*.,<br><br>　　　　　　Defendants. | Civ. No. 16-00447 DKW-KJM<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 349) |

## I. **INTRODUCTION**

Pro se Plaintiff Willis C. McAllister alleges that Defendants Adecco U.S.A. Inc. ("Adecco") and Adecco Branch Manager Curtis L. Brunk ("Brunk") (collectively, "Defendants") engaged in race-based employment discrimination and retaliation against Plaintiff in connection with Plaintiff's temporary work assignment at Trane U.S. Inc. ("Trane").[1]  More specifically, Plaintiff's First Amended Complaint ("FAC") asserts claims of hostile work environment, retaliation, disparate treatment, and constructive discharge in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981 ("§ 1981")

---

[1]Plaintiff's claims against Trane were dismissed on March 19, 2018.  *See* ECF No. 332 (granting Trane's motion for case-terminating sanctions).

against Adecco and unspecified claims in violation of § 1981 against Brunk. FAC ¶¶ 6.1, 6.3, ECF No. 117.

Before the Court are (1) Defendants' Motion for Summary Judgment, ECF No. 349; (2) Defendants' Motion for Case-Terminating Sanctions, ECF No. 355; (3) Plaintiff's Motion to Strike Defendants' Motion for Case-Terminating Sanctions, ECF No. 381; (4) Plaintiff's Motion for Discovery Pursuant to Federal Rule of Civil Procedure 56(d), ECF No. 374; and (5) Plaintiff's Responses to the Court's Order directing Plaintiff to Show Cause why the Court should not strike his "corrected" Oppositions to Defendants' motions (ECF Nos. 379, 380, 382), ECF Nos. 388, 389. Pursuant to Local Rule 7.2(d), the Court finds these matters suitable for disposition without a hearing.

For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED; Plaintiff's Motion for Rule 56(d) Discovery is DENIED; the Order to Show Cause is VACATED; and Defendants' Motion for Case-Terminating Sanctions and Plaintiff's Motion to Strike Defendants' Motion for Case-Terminating Sanctions are DENIED as moot.

///

///

///

///

## II. BACKGROUND

**A.    Factual Background**[2]

In late 2014, Plaintiff was hired by Adecco, a temporary staffing agency. Pl.'s Dep. at 72, 98-99, ECF No. 350-2; Brunk Decl. ¶¶ 2, 10, ECF No. 350-4.  On December 24, 2015, Plaintiff met with Rene Kahawaiola'a ("Kahawaiola'a"), Adecco recruiter and Plaintiff's designated Adecco representative, and completed "on-boarding paperwork, which included reviewing and acknowledging that he read Adecco's Employee Handbook and Mandatory Contact Notice.  Pl.'s Dep. at 78-81, 91, 94-95, 97-98, 104-05; Brunk Decl. ¶¶ 10-12; Pl.'s Dep. Ex. 4, Answer to Admission No. 7, ECF No. 350-2; Defs.' Ex. C, ECF No. 350-6.  Adecco's Employee Handbook includes an anti-harassment and anti-discrimination policy, which requires employees who experience or witness discrimination to report it to their Adecco representative or to Adecco's Employee Relations Department.  Pl.'s

---

[2]Plaintiff's "corrected" Concise Statement of Facts ("CSF"), ECF No. 380, includes largely conclusory allegations and legal argument, is non-responsive to or does not materially contradict Defendants' facts, and is unsupported by authenticated or admissible evidence such as declarations, depositions, answers to interrogatories, or authenticated documents, as required by Federal Rule of Civil Procedure 56(c) and Local Rule 56.1.  Similarly, Plaintiff's "corrected" "Schedule of Adverse Employment Actions," ECF No. 382, asserts unsupported conclusory allegations and legal argument, and the numerous attached exhibits are unauthenticated and, in some instances, unidentifiable.  Because Plaintiff does not controvert the material facts set forth in Defendants' CSF, they are deemed admitted.  *See* Local Rule 56.1(g).  Thus, where appropriate, the Court cites to Defendants' CSF and admissible evidence in the record for the relevant facts.

Dep. at 109-110; Duffield Decl. ¶ 2, ECF No. 350-7; Brunk Decl. ¶ 7; Ex. B at 5-6, ECF No. 350-5.

Pursuant to Adecco's standard practices, complaints of discrimination are forwarded to the Employee Relations Department, which takes the lead in investigating those complaints, contacts local branches and employees to get details, and if necessary, reminds reluctant employees of their obligation to provide such information. *See* Duffield Decl. ¶¶ 3-7.

By signing Adecco's Mandatory Contact Notice, an employee agrees to "contact Adecco at least once per week when . . . not on assignment with Adecco to verify availability to work." Brunk Decl., Ex. C ¶ 2(d). When an employee "has not contacted Adecco for 30 days or more," Adecco's normal practice is to place the employee "on 'inactive' status." Brunk Decl. ¶ 9.

Starting on February 13, 2015, Adecco placed Plaintiff in a temporary assignment at Trane to receive, organize, and pull inventory for customers at Trane's warehouse. Pl.'s Dep. at 187-88; Brunk Decl. ¶ 12; Defs.' CSF ¶ 5, ECF No. 350. Adecco instructed Plaintiff to report to Trane employee Shawna Huddy ("Huddy"), who told Plaintiff that he would report to and receive assignments and instruction from her as well as two other Trane employees. Pl.'s Dep. at 182; Defs.' CSF ¶ 5. About two weeks into the assignment, Plaintiff noticed that these three Trane employees sometimes gave him conflicting instructions or assigned

4

him tasks that had already been completed, and then "snicker[ed] and laugh[ed] about it." Pl.'s Dep. at 183-84, 187, 190, 196; *see also* Defs.' CSF ¶ 9.

On March 12, 2015, Plaintiff informed Adecco, in a lengthy email to Kahawaiola'a and Brunk, about his annoyance and frustration over the inefficiencies of receiving conflicting instructions from three individuals at Trane. Pl.'s Dep. at 78, 184-85, 200-01, 306, Ex. 7, ECF No. 350-2 at PageID # 3004-06; Brunk Decl. ¶¶ 12, 14; *see also* Defs.' CSF ¶ 9. The March 12 email also described Plaintiff's conversation with Huddy about those difficulties, Huddy's response that "she understood and she would try to correct the communication problems," and Huddy's additional comment to Plaintiff: "Just to give you a little feedback, it appears that you are learning how to fill order pretty quickly, and we will be increasing your responsibilities." Pl.'s Dep., Ex. 7. Plaintiff explained to Kahawaiola'a that he has "never found pleasure in working with and/or for incompetent managers." *Id.* And near the end of the email, Plaintiff stated:

> Now, if they are doing this as a joke or game because they don't want me there, (if they dare admit it), no need, <u>they can just call Adecco</u> and say "*we* don't want a black man working in our warehouse" (if they dare admit it), or <u>for what ever [(sic)] the reason</u> (I understand it's all at will).

Pl.'s Dep. at 200-01, Ex. 7. By reply email on Friday, March 13, 2015, Kahawaiola'a acknowledged that Plaintiff's concerns were serious and stated that she would address them with Huddy and follow up with Plaintiff the following

week. *Id.* at 212-14, Pl.'s Dep. Ex. 4, Answers to Admissions at 28. Nothing in the record indicates that Kahawaiolaʻa ever responded to Plaintiff regarding the March 12 email.

On Friday, March 20, 2015, Huddy met with Plaintiff to discuss his concerns. *See* Pl.'s Dep. Ex. 4, Answers to Admissions at 32-34; Defs.' CSF ¶ 10. Later that day, Adecco was informed that Trane ended Plaintiff's assignment. Defs.' CSF ¶ 10; Pl.'s Dep. at 215-16, Ex. 4, Answers to Admissions at 32-34; Brunk Decl. ¶ 15. That afternoon, after Kahawaiolaʻa told Brunk that Trane ended Plaintiff's assignment and she had been unable to reach Plaintiff to inform him, Brunk left Plaintiff a voicemail message telling him his assignment with Trane was terminated. Brunk Decl. ¶ 16. That evening, Plaintiff sent another lengthy email to Kahawaiolaʻa and Brunk summarizing his morning meeting with Huddy, during which Huddy said she had heard from Kahawaiolaʻa that Plaintiff had some concerns about his assignment, to which Plaintiff responded that he had sent an email to Adecco, was not prepared to discuss his concerns with Huddy, and that "it is not [his] place to tell her (and her co-managers) how to do their job." *Id.* ¶ 17; Pl.'s Dep. at 215-16, Ex. 4, Answers to Admissions at 32-34; Defs.' CSF ¶ 10. Plaintiff's March 20 email further summarized the discussion that took place about Trane's supervision and procedures, and described Huddy's tone and demeanor

during that meeting as "retaliatory, hostile, argumentative, provoking, and combative." Pl.'s Dep. Ex. 4, Answers to Admissions at 32-34.

Brunk immediately replied to Plaintiff reiterating that Trane had ended Plaintiff's assignment, indicating that he wanted to meet with Plaintiff the following Monday to discuss Plaintiff's email, and asking Plaintiff to call him. Pl.'s Dep. Ex. 4, Answers to Admissions at 32; Brunk Decl. ¶ 18. Plaintiff responded, asking Brunk to tell him before they meet, why Trane ended the assignment. Ex. 4, Answers to Admissions at 38; Brunk Decl. ¶ 19.

On Monday, March 23, 2015, Brunk emailed Plaintiff that "it would be best to have a conversation regarding your assignment at Trane" and that it could "be via the phone or in person." Brunk Decl. ¶ 20; Pl.'s Dep. Ex. 4, Answers to Admissions at 37. Plaintiff did not call or meet with Brunk. Brunk Decl. ¶ 21; *see* Pl.'s Dep. at 239-40, Ex. 4, Answers to Admissions at 38-44; *see also* Brunk Decl. ¶ 28; Defs.' CSF, Ex. D, ECF No. 350-3. Rather, on March 23, 2015, Plaintiff sent Brunk an email specifically describing Plaintiff's March 13 and March 20 emails to Adecco as "complaints of illegal racial discrimination, hostile work environment and retaliation," stated his preference that all communications be in writing, and attached a summary of the elements of a Title VII action and website links to other lawsuits against Adecco. *See* Pl.'s Dep. Ex. 4, Answers to Admissions at 35-37; Brunk Decl. ¶ 22; Defs.' CSF ¶ 12. Brunk forwarded Plaintiff's emails to

Adecco's Employee Relations Department.  Brunk Decl. ¶¶ 23-24; Duffield Decl. ¶¶ 3-4; Defs.' CSF ¶ 13.

On March 25, 2015, Florida-based Adecco Employee Relations Manager Jessica Geyer ("Geyer") sent Plaintiff several emails asking him to discuss his complaints and inquiring if Plaintiff was interested in continuing to work with Adecco on other assignments.  Pl.'s Dep. at 262-63, Ex. 8 at D000128-29, ECF No. 350-2; *see also* Duffield Decl. ¶ 9; Defs.' CSF ¶13.  Plaintiff responded that his complaints were in the hands of the Equal Employment Opportunity Commission ("EEOC"), and that he did want Adecco to place him on other assignments.  Pl.'s Dep. at 263-64, 269, Ex. 8 at D000128.  Geyer reminded Plaintiff of his obligation to report and provide details of harassment, even if he reported the harassment to the EEOC.  Pl.'s Dep. at 268, 270-71, Ex. 8 at D000127.  Plaintiff responded that he had already provided information to Adecco (through Kahawaiola'a and Brunk), attached copies of his March 13, 20, and 23 emails, and accused Geyer of retaliating by harassing him with her emails.  Pl.'s Dep. at 268, 271-72, Ex. 8 at D000122; Defs.' CSF ¶ 13.  On March 31, 2015, Plaintiff filed a complaint against Adecco with the EEOC.  Pl.'s Dep. Ex. 4, Answers to Admissions at 26.

On April 10, 2015, Adecco attempted to contact Plaintiff regarding a potential assignment.  Pl.'s Dep. at 247-48, 253-54; Ex. 8 at D000122; Brunk Decl.

¶ 25. Plaintiff did not contact Adecco thereafter regarding his interest or availability for future assignments. Pl.'s Dep. at 318-20. Thus, Adecco "later placed [Plaintiff] on inactive status in accordance with Adecco's normal practice." Brunk Decl. ¶¶ 25-26.

## B. Procedural Background

Defendants filed their Motion for Summary Judgment on May 23, 2018. ECF No. 349. On May 25, 2018, the court set hearing and briefing deadlines and provided a Notice to Pro Se Litigants that outlined Plaintiff's obligations in responding to the Motion. ECF No. 351. On July 18, 2018, the court set new briefing deadlines and continued the hearing. ECF No. 356. On August 30, 2018, the Court continued the hearing again, granted Plaintiff leave to file an Opposition by September 7, 2018, and granted Defendants leave to file a Reply by September 17, 2018. ECF No. 368. Plaintiff filed a Rule 56(d) discovery motion, ECF No. 374,[3] and non-substantive Oppositions on September 7, 2018, ECF Nos. 370-71,

_____

[3]By this Rule 56(d) motion, Plaintiff seeks an order deferring consideration of Defendants' Motion for Summary Judgment and granting Plaintiff additional time "to conduct discovery[] that will result in uncovering the truth." Pl.'s Mot. at 3, ECF No. 374. Under this rule, the court may continue a summary judgment motion "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). To qualify for such relief, a party must show that "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).

Plaintiff argues that Defendants have "not cooperated in permitting the Plaintiff to conduct meaning[ful] . . . discovery," and therefore, he is "unable to fully present facts essential to [his] opposition . . . because those documented facts are in the exclusive custody and control of the Defendants." Mot. at 2, ECF No. 374. But Plaintiff did not identify the specific facts

and substantive Oppositions on September 11, 2018, ECF Nos. 380, 382.

Defendants filed a Reply on September 17, 2018. ECF No. 386.[4]

## III. <u>STANDARD OF REVIEW</u>

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

---

sought, show that such factual evidence exists, and that it would prevent summary judgment. *See id.*; *Getz v. Boeing Co.*, 654 F.3d 852, 867-68 (9th Cir. 2011). Nor did Plaintiff set forth such information in affidavit form, as required by Rule 56(d). Accordingly, Plaintiff's Motion for Discovery Pursuant to Rule 56(d) is DENIED.

[4]Plaintiff titled his substantive oppositions as "corrected" oppositions. ECF Nos. 379-80, 382. Because Plaintiff's "corrected" oppositions do not correct errors, but are instead "wholly new substantive documents setting forth, for the first time, facts and argument in opposition to Defendants' motions," the Court "ORDER[ED] Plaintiff TO SHOW CAUSE by September 27, 2018, why the Court should not strike these 'corrected' documents (ECF Nos. 379, 380, 382) as untimely." ECF No. 384.

Plaintiff responded on September 27, 2018, stating that he suffered "an electrical power failure, that resulted in Plaintiff's home computer[] experiencing processing, reproduction, and printing errors[] in documents that were filed with Court[.]" ECF No. 388 at 2. The Court recognizes that Plaintiff is proceeding pro se, and therefore, is entitled to some leniency. *See Bernhardt v. L.A. Cty.*, 339 F.3d 920, 925 (9th Cir. 2003); *Minor v. Fedex Office & Print Servs., Inc.*, 205 F. Supp. 3d 1081, 1086 (N.D. Cal. 2016) (citation omitted). Further, the Court finds that Defendants are not prejudiced by the Court's consideration of Plaintiff's "corrected" oppositions. Defendants were able to file supplemental replies to their motions that substantively address Plaintiff's "corrected" oppositions. Thus, the Court VACATES the Order to Show Cause.

*Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323). If the moving party carries its burden under Rule 56(a), the burden shifts to the nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts [and] . . . come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citations and internal quotation signals omitted); *see also Cafasso, U.S. ex re. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations."). Each party must support its position that a fact is disputed or undisputed by (1) "citing to particular parts of [evidentiary] materials in the record[;]" or (2) "showing that the materials cited do not establish the absence or presence of a genuine dispute," or that the opposing party "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1184 (9th Cir. 2016).

The Court may not grant summary judgment solely because a party fails to oppose the motion. *Cristobal v. Siegal*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994); *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003). But, when a party fails to properly support an assertion of fact or fails to challenge the facts asserted by the moving party, the non-moving party may be deemed to have admitted the validity of those facts. *See* Fed. R. Civ. P. 56(e)(2); Local Rule 56.1(g).

## IV. <u>DISCUSSION</u>

Defendants argue that summary judgment should be granted because Plaintiff cannot establish: (1) Adecco's liability for Trane's alleged racially discriminatory, harassing, or retaliatory conduct; (2) prima facie cases of race-based discrimination and retaliation by Adecco or that Adecco's reasons for its

actions were pretextual, (3) racially harassing conduct by Adecco; and (4) that Brunk acted with racial animus or participated in any racially discriminatory act. The Court agrees and addresses these arguments in turn.

## A. Legal Standards

### 1. *Title VII*

Title VII makes it an unlawful employment practice for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a discrimination claim in violation of Title VII "by proving the existence of a hostile work environment" or "by proving disparate treatment." *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991), *superseded by statute on other grounds as stated in Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1041 (9th Cir. 2005). Title VII also makes it unlawful for an employer to retaliate against an employee because the employee has taken an action to enforce his rights under Title VII. 42 U.S.C. § 2000e-3.

To establish a claim for race-based discrimination or retaliation under Title VII, "a plaintiff may offer direct evidence of discrimination," or he "may prove his case through circumstantial evidence, following the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Lyons v.*

*England,* 307 F.3d 1092, 1112 (9th Cir. 2002); *see Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008). "Direct evidence typically consists of clearly . . . racist . . . statements or actions by the [defendant]." *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005).

Where there is no direct evidence of discrimination, the Court applies the *McDonnell Douglas* framework. Under this framework, a plaintiff must raise an inference of discrimination, that is, a prima facie case, after which the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for its employment decision. *Surrell*, 518 F.3d at 1106; *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007). If the defendant provides such a reason, to defeat summary judgment, the plaintiff must offer evidence that "the employer's proffered nondiscriminatory reason is merely a pretext for discrimination." *Surrell*, 518 F.3d at 1106 (quoting *Dominguez-Curry*, 424 F.3d at 1037). Even though the "intermediate burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

///

///

## 2. Section 1981

Section 1981 provides that all persons have the same right as white citizens "to make and enforce contracts," which includes "the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981. In the employment context, § 1981 "bars employers from discriminating and retaliating against employees based on the employee's race[.]" *Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 805 (7th Cir. 2014); *see Surrell*, 518 F.3d at 1103 ("[Section] 1981 prohibits discrimination in the 'benefits, privileges, terms and conditions' of employment.") (citing 42 U.S.C. § 1981(b)) (other citation omitted).

When analyzing a § 1981 racial employment discrimination claim, courts apply "the same legal principles as those applicable in a Title VII disparate treatment case" and "[t]ypically, [courts] apply the burden-shiting framework established in *McDonnell Douglas*." *Metoyer v. Chassman*, 504 F.3d 919, 930 (9th Cir. 2007), *abrogated on other grounds by Nat'l Assoc. of African Am.-Owned Media ("NAAAOM") v. Charter Commc'ns, Inc.*, —F.3d—, 2018 WL 6037642 (9th Cir. Nov. 19, 2018), (quoting *Fonseca v. Sysco Food Servs. of Ariz. Inc.*, 374 F.3d 840, 850 (9th Cir. 2004) and *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004)); [5] *Surrell*, 518 F.3d at 1103.

---

[5]*Metoyer* also held that a plaintiff may prevail on a § 1981 discrimination claim by showing that racial discrimination was a motivating factor in an employment action, applying the causation standard applicable to Title VII disparate treatment claims. 504 F.3d at 934. The Ninth Circuit

**B.     Claims Based on Adecco's Conduct**

Plaintiff claims that Adecco engaged in race-based harassment and/or disparate treatment based on (1) Kahawaiolaʻa and Brunk's alleged failure to investigate and respond to him regarding his email complaints about racial discrimination at Trane, FAC ¶ 7.4; (2) Geyer's repeated requests for information about his racial discrimination claims, *id.* ¶ 7.51; (3) Adecco's failure to offer him other assignments after he filed his EEOC complaint, *id.* ¶ 7.52; and (4) Adecco's failure to respond to Plaintiff after he told Geyer he was interested in future assignments, *id.* ¶¶ 7.53, 7.54.

Defendants contend that Plaintiff cannot produce evidence to establish prima facie claims against Adecco for race-based disparate treatment and retaliation, and that Plaintiff lacks evidence sufficient to establish a race-based hostile work environment claim against Adecco.  For the reasons discussed below, the Court agrees with Defendants.

///

///

---

recently rejected the basis for that holding — that the two statutes share the same anti-discrimination objectives — but, after examining the text of § 1981 as required by *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009) and *University of Texas Southwest Medical Center v. Nassar*, 570 U.S. 338 (2013), determined that a motivating factor standard still applies to a § 1981 claim.  *See NAAAOM v. Charter Commc'ns, Inc.*, —F.3d—, 2018 WL 6037642, at *4-7 (holding that "mixed motive claims are cognizable under § 1981").  And nothing in *NAAAOM* calls into question *Metoyer's* more general statement that the *McDonnell Douglas* framework may be applied to a § 1981 claim.  *See Metoyer*, 504 F.3d at 930-31.

### 1. *Disparate Treatment*

An employer engages in discriminatory disparate treatment when it "has treated a particular person less favorably than others because of a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (internal quotation and citation omitted). Here, there is no direct evidence of discrimination. *See* Pl.'s Dep. at 134-35 (conceding that Brunk did not say anything to make Plaintiff feel discriminated against); *id.* at 279 (admitting that Geyer may not have even known his race and that he did not know if her conduct was because of race). Thus, the Court applies the *McDonnell Douglas* framework.

To establish a prima facie case of disparate treatment, a plaintiff must show that: (1) he belongs to a protected class, (2) he performed his job satisfactorily, (3) he suffered an adverse employment action, and (4) other "similarly situated" employees outside of the protected class did not suffer similar adverse employment actions, or were treated more favorably. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (citations omitted); *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citation omitted).

Plaintiff has failed to establish the fourth element of a prima facie case. The record lacks any evidence whatsoever that other similarly situated persons were treated more favorably by Adecco. In fact, Plaintiff concedes as much. First,

during his deposition, Plaintiff was questioned about his answers to an intake

questionnaire:

> Q.  And the last question at the bottom of that page asks
> you to describe persons in the same or similar situation as
> you who were treated better than you.  And your answer
> is (as read):
> None that I'm aware of at this time.
> Do you see that?
>
> A.  That's correct.
>
> Q.  As you sit here today, is that an answer that needs to
> be modified?
>
> A.  Today, no.  But discovery is pending which may turn
> that disparate treatment inquiry into a yes.

Pl.'s Dep. at 291-92.  And in opposing Defendants' motion, Plaintiff provided no

evidence that Adecco treated others more favorably.  At most, the FAC alleges that

because the warehouse position was filled by others before and after Plaintiff, that

fact alone establishes that they were treated more favorably than Plaintiff.  *See*

FAC ¶ 7.26 (alleging that Defendants "all admit that Plaintiff's position [at Trane]

was not a newly created position [and therefore] . . . he was treated less favorably

than his similarly situated predecessors[] and successors").  This conclusory

allegation makes no sense, but even if it did, allegations without evidentiary

support do not suffice to establish a genuine issue of material fact.  *See In re*

*Barboza*, 545 F.3d at 707.

Second, although Plaintiff testified that Adecco failed to follow its anti-discrimination and anti-harassment policy with respect to its investigation of his complaints, Plaintiff admits that he "does not know Adecco's policy or practice on conducting an investigation and has no evidence of how Adecco handled other complaints." Defs.' CSF ¶ 14; *see* Pl.'s Dep. at 155-56, 161, 280-84. Thus, Plaintiff failed to provide evidence that Adecco treated Plaintiff's complaints less favorably (or even differently) than it treats complaints of discrimination from other employees.

Third, Plaintiff failed to show that Adecco treated him less favorably by failing to place him on other assignments after he emailed Geyer on March 25, 2015, saying that he was interested in a future assignment. Plaintiff concedes that after March 25, 2015, he failed to keep Adecco apprised of his availability for other assignments. *See* Pl.'s Dep. at 318-20. And he provided no evidence that others who failed to regularly apprise Adecco of their availability to work were offered further assignments.

Based on the foregoing, Plaintiff failed to establish a genuine issue of material fact that he was treated less favorably by Adecco than others similarly situated, and therefore failed to establish a prima facie case of race discrimination. Thus, the Court GRANTS Defendants' Motion as to Plaintiff's Title VII and § 1981 disparate treatment discrimination claims against Adecco.

## 2.    Retaliation

Race-based retaliation claims may also be considered under the *McDonnell Douglas* burden-shifting framework.  *See Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011); *Surrell*, 518 F.3d at 1108.  "To establish a prima facie case [of retaliation], the employee must show that he engaged in a protected activity, he was subsequently subjected to an adverse employment action, and that a causal link exists between the two."  *Dawson*, 630 F.3d at 936 (citing *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988)); *see Surrell*, 518 F.3d at 1108 (§ 1981); *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006) (Title VII).  The causal standards applicable to Title VII and § 1981 claims differ — Title VII claims require a showing of but-for causation, *see Nassar*, 570 U.S. at 352, while § 1981 claims require a showing that discriminatory animus was a motivating factor in the employment action, *see NAAAOM*, 2018 WL 6037642, at *7.

Plaintiff contends that Adecco retaliated against him by (1) failing to investigate and respond to him regarding his complaints about racial discrimination at Trane, (2) failing to tell Plaintiff why Trane terminated his assignment, and (3) failing to follow Adecco's policies and procedures.  Pl.'s Dep. at 297.  Defendants contend that Plaintiff did not engage in protected activity and Adecco did not subject Plaintiff to an adverse employment action.  Thus, Defendants argue that Plaintiff cannot establish a prima facie case, or even if he could, he cannot

show that Adecco's proffered reasons for its actions were pretextual. The court agrees.

### a. *Protected activity*

A protected activity includes participation in the enforcement of one's rights under Title VII (participation clause) or informal opposition to an employer's discriminatory conduct under Title VII (opposition clause). *See* 42 U.S.C. § 2000e-3(a) (prohibiting discrimination against an employee who filed an EEOC charge and/or participated in proceedings related to such charge, or who opposed any practice made unlawful by Title VII); *Learned v. City of Bellevue*, 860 F.2d 928, 932-33 (9th Cir. 1988); *Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978). To constitute Title VII protected activity under either the participation clause or opposition clause, however, a complaint must address conduct that "fairly fall[s] within the protection of Title VII." *Learned*, 860 F.2d at 932. A plaintiff need not prove that the conduct at issue was in fact unlawful, but he must show that he had a reasonable belief that the employer's conduct violated Title VII. *Trent v. Valley Elec. Ass'n*, 41 F.3d 524, 526 (9th Cir. 1994) (citing cases).

To be reasonable, a plaintiff's *subjective* belief alone is not sufficient; rather, a plaintiff's belief must be *objectively* reasonable. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001); *McConnell v. Westpoint Stevens, Inc.*, 168 F.

App'x 911, 914 (11th Cir. 2006) ("[Plaintiff] must establish not only that she *subjectively* believed her employer was engaged in unlawful employment practices, but also that her belief was *objectively* reasonable in light of the facts.") (citation omitted); *Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1994); *Bentzien v. City & Cty. of Honolulu, Emergency Servs. Dep't*, 2008 WL 11426777, at *6 (D. Haw. Mar. 7, 2008). Thus, "if no reasonable person could have believed that the underlying incident complained about constituted unlawful discrimination, then the complaint is not [a] protected [activity]." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008).

Plaintiff concedes that the basis for his belief that Trane's conduct was based on race is limited to his observation that (1) he was "the only black guy there," and his assumption that (2) the Trane employees "can't be that stupid" and must have known that having three people giving instructions would cause problems. Pl.'s Dep. at 190-91, 193-94. Plaintiff explained that "when you got three people just full on telling you what to do without even talking to each other in such a small place, to me that's abuse, and I think the abuse is racially motivated . . . ." *Id.* at 194. But Plaintiff admits that none of the three Trane employees made any comments to him that were racial in nature or used a derogatory racial term and that nothing else contributed to the alleged racial harassment at Trane. *Id.* at 228.

Plaintiff's mere speculation that the Trane employees acted with racial animus simply does not come close to establishing that his subjective belief that Trane's conduct was race-based harassment was objectively reasonable. *See, e.g.*, *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive."); *Alexander v. U.S. Dep't of Veterans Affairs*, 2012 WL 78874, at *5 (D. Md. Jan. 10, 2012) ("[A] plaintiff's mere speculation as to racial . . . animus will not suffice to prove that she suffered unwelcome conduct due to race."); *cf. Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (explaining that a plaintiff's "own naked opinion, without more, is not enough to establish a prima facie case of discrimination" (citations omitted) (quotation marks and brackets omitted)).

Because Plaintiff failed to produce evidence sufficient to raise a genuine issue that he had an objectively reasonable belief that Trane's conduct was race-based harassment, he failed to establish that either his EEOC complaint or his informal email complaints constitute protected activity. This alone is fatal to his retaliation claim.

///

///

### b.    *Adverse employment actions*

Moreover, most of Adecco's alleged actions are not "adverse employment actions."  An adverse employment action "is one that materially affects the compensation, terms, conditions, or privileges of . . . employment."  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (internal quotation marks and brackets omitted).

Plaintiff alleged that Adecco failed to offer him other assignments after he filed his EEOC complaint.  FAC ¶ 7.52.  For purposes of this order, the court assumes that this is an adverse employment action, but for the reasons discussed in the next section, Plaintiff failed to establish causation and/or pretext with respect to this action.  Plaintiff also testified that Adecco engaged in the following alleged retaliatory acts:  (1) failure to investigate his email complaints about racial discrimination at Trane, (2) failure to tell him why Trane terminated his assignment, and (3) failure to follow Adecco's anti-discrimination and anti-harassment policies and procedures.  *See* Pl.'s Dep. at 297.  None of these constitute adverse employment actions.

First, "[a] failure to investigate can be considered an adverse employment action only 'if the failure is in retaliation for some separate, protected act by the plaintiff.'"  *Brayboy v. O'Dwyer*, 633 F. App'x 557, 558 (2d Cir. 2016) (quoting *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 722 (2d Cir. 2010)).

Here, Plaintiff alleges that Adecco retaliated in response to his email complaints by not investigating those very same complaints. Under these circumstances, as a matter of law, Adecco's failure to investigate cannot be an adverse employment action. *See Fincher*, 604 F.3d at 721 ("An employee whose complaint is not investigated cannot be said to have thereby suffered a punishment for bringing that same complaint.").

Second, the undisputed record shows that Adecco attempted multiple times to discuss by phone or in person Plaintiff's concerns and termination from Trane, but Plaintiff refused. Pl. Dep. at 247, 262-63, Ex. Answers to Admissions at 32, 37, 38, 41-43. Adecco's refusal to conduct this discussion via email is nothing more than a "petty slight" or "minor annoyance" that does not amount to harm sufficient to constitute an adverse employment action. *See Burlington N. & S.F. Ry v. White*, 548 U.S. 53, 68 (2006).

And third, as discussed above, Plaintiff offered no evidence that Adecco failed to follow its policies and standard practices in connection with Plaintiff's email complaints.

### c. *Causation/Pretext*

With respect to Plaintiff's allegation that Adecco failed to offer him other assignments after he filed his EEOC complaint, Plaintiff cannot establish that such

failure was caused by the filing of his EEOC complaint and/or that Adecco's reason for failing to offer other assignments was pretextual.

Regarding causation, Plaintiff admits that Adecco *did* attempt to contact him on April 10, 2015 regarding another possible assignment.  *See* Pl.'s Dep. at 247-48, 253-54 (confirming that on April 10, 2015, Adecco left Plaintiff a voice message about a possible assignment); Ex. 8 at D000122 (Plaintiff's email response to Geyer, Brunk and Kahawaiolaʻa on April 12, 2015 that he received a call from Adecco on April 10, 2015 at 2:45 p.m.); *see also* Brunk Decl. ¶ 25 (confirming that an Adecco recruiter "had called [Plaintiff] about a potential job").  Thus, Plaintiff failed to show that Adecco, in fact, failed to offer an assignment after he filed his EEOC complaint.  And because Adecco's attempt to contact Plaintiff about a job offer occurred after Plaintiff filed his EEOC complaint, he cannot show the requisite causation.

But even if the court assumes (which it does not) that Plaintiff established a prima facie case of retaliation based on Adecco's failure to offer further assignments, Plaintiff failed to provide evidence that Adecco's reason for placing him on inactive status — that Plaintiff failed to comply with Adecco's mandatory contact requirement — was pretext.

Plaintiff admits that he did not contact Adecco regarding his availability for assignments after his March 25 email to Geyer regarding his interest in other

assignments. Pl.'s Dep. at 318-20. Brunk confirms that because Plaintiff did not contact Adecco thereafter "regarding his availability or interest in future work assignments," he was "later placed on inactive status in accordance with Adecco's normal practice." Brunk Decl. ¶¶ 25-26. And Plaintiff failed to provide any evidence of racial animus by any Adecco employee. *See* Pl.'s Dep. at 134-35, 279.

In sum, Plaintiff has failed to establish a genuine issue of fact on these points and therefore, Defendants' Motion is GRANTED as to Plaintiff's Title VII and § 1981 retaliation claims against Adecco.

### 3.      *Hostile Work Environment*

Plaintiff alleges that Adecco created a hostile work environment by engaging in the following race-based harassment: (1) failure to investigate his complaints, (2) Geyer's repeated requests that Plaintiff discuss his complaints with her, (3) failure to tell him why Trane terminated his assignment, and (4) failure to respond to Plaintiff after he told Geyer on March 25, 2015 that he was interested in future assignments.

But, as set forth above, Plaintiff offered no evidence whatsoever that Adecco's actions were based on racial animus. *See* Pl.'s Dep. at 134-35, 279. Nor, as set forth above, did Plaintiff offer any evidence to show that Adecco treated others more favorably. *See* Duffield Decl. ¶ 3; Brunk Decl. ¶ 23. Absent any evidence that Adecco's conduct was based on race, Plaintiff's hostile work

environment claims fail. And even if the court assumes Plaintiff established a prima facie case, Adecco offered non-discriminatory reasons for its actions, and Plaintiff's failure to provide evidence of racial animus is fatal to his effort to show that Adecco's reasons are pretext. *See, e.g.*, *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 642 (9th Cir. 2003) (affirming summary judgment because, even assuming plaintiff could establish a prima facie case, lack of evidence of discriminatory intent was insufficient to show pretext); *Singson v. Farber*, 2010 WL 5399217, at *7-8 (N.D. Cal. Dec. 23, 2010) (granting summary judgment on § 1981 hostile work environment claim where plaintiff failed to produce evidence that allegedly abusive conduct was based on race).

Accordingly, Defendants' Motion is GRANTED as to Plaintiff's Title VII and § 1981 hostile work environment claims against Adecco.

## C. Claims Based on Trane's Actions

Plaintiff alleges that Trane subjected him to a hostile work environment and unlawfully terminated his assignment because of his race. Plaintiff further alleges that Adecco and Trane were his joint employers and, therefore, Adecco is liable for Trane's alleged discriminatory, harassing, and retaliatory conduct in violation of both Title VII and § 1981.

Defendants argue that Adecco cannot be liable as a joint employer for Trane's conduct under § 1981 and Title VII because Adecco and Trane are not

joint employers and Plaintiff cannot show that Trane engaged in discriminatory, harassing, or retaliatory conduct. The Court addresses these arguments in turn.

### 1. Adecco is not Liable for Trane's Conduct under § 1981

Plaintiff fails to raise a triable issue that Adecco could be liable under § 1981 for Trane's conduct. Trane could not have violated § 1981 in the first place. "Any claim brought under § 1981 . . . must initially identify an impaired 'contractual relationship' under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (citations omitted). Here, the record does not include evidence of an employment contract between Plaintiff and Trane, or that Plaintiff suffered any loss of a contractual interest due to Trane's termination of his assignment. For example, Plaintiff testified generally that his placement at a temporary assignment is at-will, and although his assignment could end at any time, he would still be employed by the temporary placement agency. *See* Pl.'s Dep. at 43-44, 48; *see also Kulukulualani v. Tori Richard, Ltd.*, 2015 WL 4041528, at *5 n.1 (D. Haw. June 30, 2015) (rejecting § 1981 discrimination claim against employer, in part, because plaintiff was an at-will employee and therefore, the alleged wrongdoing did not "involve the making or enforcement of a contract"); *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 220 (3d Cir. 2015) (affirming summary judgment for client to which the plaintiff was assigned to work by temporary placement agency because the record failed to show the

existence of a contract between the plaintiff and the client or that the plaintiff had any rights under any existing contract that he wished to enforce). Thus, based on this record, even assuming that Adecco and Trane were joint employers, Adecco cannot be liable under § 1981 for Trane's alleged race-based harassment, discrimination, and retaliatory termination.

### 2. Adecco is Not Liable as a Joint Employer under Title VII

The Ninth Circuit recognizes that an entity may be liable under Title VII for another entity's discriminatory conduct pursuant to a "joint employer" theory of liability. *See Stock v. NV Energy, Inc.*, 670 F. App'x 596, 597 (9th Cir. 2016) (Mem.) (citing *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1093 (C.D. Cal. 2002)). "Two or more employers may be considered 'joint employers' if both employers control the terms and conditions of the [plaintiff's] employment." *EEOC v. Pac. Mar. Ass'n*, 351 F.3d 1270, 1275 (9th Cir. 2003) ("*Pacific Maritime*") (applying "economic reality test" to determine joint employer status under Title VII) (citing *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 n.4 (6th Cir. 1997) and *NLRB v. Browning-Ferris Indus. of Pa.*, 691 F.2d 1117, 1123 (3d Cir. 1982);[6] *EEOC v. Global Horizons, Inc.*, 860 F. Supp. 2d 1172,

---

[6]*Pacific Maritime* is the only opinion in which the Ninth Circuit applied the "economic reality test" to Title VII claims, but the Court effectively withdrew that opinion by granting rehearing, *see EEOC v. Pac. Mar. Ass'n*, 367 F.3d 1167 (9th Cir. 2004) (stating that the prior opinion "shall not be cited as precedent" unless adopted by the court en banc), and then neither vacating the 2004 order nor reinstating the 2003 opinion once the parties stipulated to dismissal. *See DaOro v. Eskaton*, 2013 WL 789120 (E.D. Cal. Mar. 1, 2013). Nevertheless, both the Ninth

1183 (D. Haw. 2012) (explaining that under the "economic reality test," courts consider "whether the alleged joint employer (1) supervised the employee, (2) had the power to hire and fire him, (3) had the power to discipline him, and (4) supervised, monitored and/or controlled the employee and his work site") (citing *Pacific Maritime*, 351 F.3d at 1277).

Here, there is no dispute that (1) Trane decided whether to accept Plaintiff for the warehouse position, (2) Trane established Plaintiff's daily working conditions and directed to whom he reported,[7] (3) Plaintiff reported to Trane's warehouse, (4) Trane determined the duration and extent of Plaintiff's assignments, (5) Plaintiff took instruction from Trane employees, and (6) Trane made the decision to terminate Plaintiff's assignment. Defs.' CSF ¶¶ 6, 10; Pl.'s Dep. at 170, 180-82, 187-89, 224, Ex. 7 Answers to Admissions at 32.

Based on these facts, it is clear that Adecco lacked control over the terms and conditions of Plaintiff's daily employment and thus, was not a joint employer. *See, e.g.*, *Shah v. Littelfuse Inc.*, 2013 WL 1828926, at *5 ("[A] temporary

---

Circuit and district courts continue to cite *Pacific Maritime* as *persuasive* authority in Title VII cases. *See, e.g.*, *Ford-Torres v. Cascade Valley Telecom*, 374 F. App'x 698, 700 (9th Cir. 2010) (Mem.); *Morsovillo v. Clark Cty.*, 136 F. App'x 17 (9th Cir. 2005) (Mem.); *Bowling v. Diamond Resorts Int'l, Inc.*, 2018 WL 3244068, at *7 (D. Haw. July 3, 2018); *Drottz v. Park Electrochemical Corp.*, 2012 WL 1344729, at *5 n.6 (D. Ariz. Apr. 18, 2012) (collecting cases).

[7]Although Plaintiff disputes these facts by alleging that Trane's parent corporation, Ingersoll Rand, not Trane, established Plaintiff's daily working conditions and directed to whom he reported, he does not allege that Adecco engaged in these activities. *See* Pl.'s CSF ¶ 6, ECF No. 380.

employment agency cannot be sued pursuant to a joint-employer theory" where "the agency serves as an intermediary between the plaintiff and the agency's client but exercises virtually no control or supervision over the plaintiff's day-to-day work"); *Medina v. Adecco*, 561 F. Supp. 2d 162, 177-78 (D.P.R. 2008) (granting summary judgment where plaintiff failed to produce evidence that Adecco exercised control over plaintiff's daily employment, and therefore was not a joint employer); *Watson v. Adecco Emp't Servs., Inc.*, 252 F. Supp. 2d 1347, 1356-58 (M.D. Fla. 2003) (concluding that temporary placement agency could not be a joint employer of temporary employee for purposes of Title VII where agency exercised no control over the employee's responsibilities or duties once on assignment, even though the agency paid the employee).

Further, even if Adecco was a joint employer, however, it cannot be liable for Trane's discriminatory conduct unless it participated in the discrimination or "knew or should have known of the discriminatory conduct and failed to take prompt corrective measures within its control." *Shah*, 2013 WL 1828926, at *6; *see, e.g.*, *Punt v. Kelly Servs.*, 2016 WL 67654, at *15 (D. Colo. Jan. 6, 2016) (agreeing with reasoning of EEOC guidance, written for the specific context of temporary employment agencies sending employees to clients, and concluding that the agency may be liable "if it participates in the client's discrimination . . . [or]

knew or should have known about the client's discrimination and failed to undertake prompt corrective measures within its control"); *Lima v. Adecco*, 375 F. App'x 54, 55 (2d Cir. 2010) (determining that "even if [the agency] could be considered a 'joint employer,' [it] could not be held liable to plaintiff based on [joint employer] theory because there is no evidence that [the agency] either knew or should have known about any of the alleged discrimination."). And corrective measures are only within the control of an agency when the agency has control over the client's employees and their decisions. *See, e.g.*, *Neal v. Manpower Int'l, Inc.*, 2001 WL 1923127, at *9 (N.D. Fla. Sept. 17, 2001) (recognizing that even if placement agency was a joint employer, it was not liable because it lacked control over client employer's employee supervisors and thus, had no "'opportunity to guard against their misconduct,' nor to 'screen them, train them, and monitor their performance'") (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 803 (1998) (brackets omitted)).

Here, the record is devoid of evidence that Adecco controlled or could have controlled the work environment at Trane and/or Trane's decision to terminate Plaintiff's assignment. That is, even if Adecco knew or should have known of Trane's allegedly discriminatory conduct, Adecco could not have taken corrective action because Trane's alleged misconduct was not within Adecco's control. Thus,

Adecco cannot be liable under the joint employer doctrine for Trane's alleged race-based harassment, discrimination, and retaliatory termination under Title VII.

Moreover, even if Adecco could be liable for Trane's conduct as a joint employer, Plaintiff has failed to establish either the existence of a hostile work environment at Trane or prima facie cases of disparate treatment and retaliation by Trane.

### 3. *Hostile Work Environment*

Plaintiff contends that he was subjected to race-based harassment or abuse when Huddy and the other two Trane employees gave Plaintiff conflicting instructions and assigned him tasks that had already been completed, and then "snicker[ed] and laugh[ed]" about it.  Pl.'s Dep. at 186, 190-91, 194, 196; *see also* Defs.' CSF ¶ 9.  According to Plaintiff, they "d[id] this on purpose . . . because I'm black."  Pl.'s Dep. at 191.  But as set forth above, Plaintiff admits that none of the three Trane employees made any comments to him that were racial in nature or used a derogatory racial term and that nothing else contributed to the alleged racial harassment at Trane.  *Id.* at 228.

Plaintiff's deposition testimony falls far short of establishing the first element — that he was subjected to race-based harassing conduct.  That is, Plaintiff's mere speculation that the Trane employees acted with racial animus, without more, is insufficient.  *See, e.g.*, *Carmen*, 237 F.3d at 1028; *Alexander*,

2012 WL 78874, at *5; *cf. Evans*, 80 F.3d at 959.  In short, Plaintiff has failed to provide evidence that he was subjected to unwelcome conduct of a harassing nature *based on race* by Trane employees.  Thus, he failed to establish a genuine issue of material fact as to the existence of a hostile work environment at Trane.

### 4.      *Disparate Treatment*

Plaintiff also fails to establish a prima facie case of discrimination based on disparate treatment at Trane — both for the conflicting instructions and snickering by Trane employees toward Plaintiff and termination of Plaintiff's assignment.

Here, Plaintiff has failed to establish the fourth element.  That is, Plaintiff lacks evidence that similarly situated individuals were treated more favorably.  *See* Defs.' CSF ¶ 15; Pl.'s Dep. at 227-28 (conceding that he is hoping to get a document "to show what [Trane was] doing to me was racially motivated because they didn't do that to previous and subsequent people"), 291-92 (responding when asked to describe similarly-situated individuals who were treated better than he, "discovery is pending which may turn that disparate treatment inquiry into a yes").  And Plaintiff provided no evidence to dispute Defendants' evidence that after Plaintiff's termination, he was replaced by an African-American.  *See* Defs.' CSF ¶ 16; Brunk Decl. ¶ 27 ("Following Trane's termination of [Plaintiff's] assignment, Adecco placed another employee in the warehouse position at Trane, who was also African-American.").

Thus, Plaintiff has failed to establish a prima facie case of race-based discrimination based on disparate treatment by Trane with regard to both the working conditions, i.e., the conflicting instructions and snickering, and Trane's termination of Plaintiff's assignment.

### 5. *Retaliation*

A critical component of establishing the causal link element of a prima facie case is evidence that the employer knew that the plaintiff had engaged in protected activity. *See Thomas v. City of Beaverton*, 379 F.3d 802, 812 n.4 (9th Cir. 2004) (recognizing that an employee's awareness of employee protected activity is important in establishing the requisite causal link between that activity and the alleged retaliatory action); *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).

Here, Plaintiff lacks evidence that Trane knew he complained to Adecco of racial discrimination by Trane. Plaintiff testified that Kahawaiola'a "made Trane aware of that initial [March 12] email." Pl.'s Dep. at 229. But he concedes that he was not a participant in or privy to any communication between Adecco and Trane about Plaintiff's March 12 email to Kahawaiola'a or Trane's termination of Plaintiff's assignment, and that he has no evidence that Trane knew that his March 12 email included a complaint of racial discrimination. *See* Pl.'s Dep. at 222-24, 229-32. And there is no evidence that Plaintiff told Huddy that the concerns he

reported to Adecco were about racial discrimination.  Because Plaintiff has produced no evidence that Trane knew that he complained to Adecco of racial discrimination at Trane, he cannot establish the necessary causal link for Title VII and § 1981 retaliation claims.

In sum, the Court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's Title VII and § 1981 claims against Adecco based on Trane's conduct.

## D.     Section 1981 Claim Against Brunk

Plaintiff contends that Brunk is personally liable under § 1981 for his alleged failure to investigate Plaintiff's complaints of discrimination and harassment, and instead, forwarded those complaints to Adecco's Employee Relations Department.  *See* Pl.'s Dep. at 134-35, 138-40.  Defendants contend that Plaintiff's § 1981 claim against Brunk fails as a matter of law.  The Court agrees with Defendants.

Although the Ninth Circuit has not determined whether an individual may be liable under § 1981, other circuit courts and district courts in the Ninth Circuit "have determined individuals may be held liable for violations of rights provided under Section 1981."  *Mility v. Cty. of Kern*, 2018 WL 3753021, at *4 (E.D. Cal. Aug. 6, 2018) (citing cases); *see, e.g.*, *Tolbert v. Smith*, 790 F.3d 427, 434 n.3 (2d Cir. 2015); *Al-Khazraji v. Saint Francis Coll.*, 784 F.2d 505, 518 (3d Cir. 1986); *Carrea v. California*, 2009 WL 1770130, at *5 (C.D. Cal. Jun. 18, 2009).

A person may be individually liable under § 1981 if he "personally participate[d] in the discriminatory acts or [was] informed of the wrongdoing of his . . . subordinates but [was] grossly negligent or deliberately indifferent as to their supervision." *Kaulia v. Cty. of Maui*, 504 F. Supp. 2d 969, 981 (D. Haw. 2007); *see also Stone v. Haw. Dep't of Educ.*, 2017 WL 2260069, at *5 (D. Haw. May 23, 2017) ("[T]o make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action." (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000)).

Here, because Plaintiff failed to establish a § 1981 claim against Adecco, he necessarily fails to establish a claim against Brunk. *See, e.g.*, *Rue v. Laidlaw Transit Inc.*, 1997 WL 47510, at *5 (N.D. Cal. Jan. 27, 1997) (granting summary judgment on § 1981 claim against individual defendants because plaintiff "failed to show any discriminatory action" by his employer). Moreover, the undisputed evidence shows that Brunk forwarded Plaintiff's complaints to the Employee Relations Department in accordance with Adecco's standard procedures. *See* Duffield Decl. ¶ 3; Brunk Decl. ¶ 23. And Plaintiff failed to provide any evidence to raise a genuine issue that Brunk was motivated by a discriminatory animus in

doing so. *See* Pl.'s Dep. at 134-35. Accordingly, Defendants' Motion is GRANTED as to Plaintiff's § 1981 claim against Brunk.[8]

## V. <u>CONCLUSION</u>

Based on the foregoing, Defendants' Motion for Summary Judgment is GRANTED; Plaintiff's Motion for Rule 56(d) Discovery is DENIED; the Order to Show Cause is VACATED; and Defendants' Motion for Case-Terminating Sanctions and Plaintiff's Motion to Strike Defendants' Motion for Case-Terminating Sanctions are DENIED as moot.

The Clerk of Court is directed to enter judgment.

IT IS SO ORDERED.

DATED: November 21, 2018 at Honolulu, Hawaii.



Derrick K. Watson
United States District Judge

---

*McAllister v. Adecco USA Inc., et al.*, Civ. No. 16-00447 DKW-KJM; Order Granting Defendants' Motion For Summary Judgment (ECF No. 349)

---

[8]And because the Court grants summary judgment on all claims, Defendants' Motion for Case-Terminating Sanctions and Plaintiff's Motion to Strike Defendants' Motion for Case-Terminating Sanctions are DENIED as moot.